(No. 64528

EDWARD K. FUOSS, Appellant, v. AUTO OWNERS (MUTUAL) INSURANCE COMPANY *et al.*, Appellees.

*Opinion filed November 16, 1987.*

CUNNINGHAM, J., took no part.

W. Loren Thomson, Kevin P. Fitzgerald, and Rex L. Reu, of Bloomington, for appellant.

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, (Timothy S. Richards, of counsel), for appellee Auto Owners (Mutual) Insurance Company.

Sanford Goffstein and Michael S. Weinberg, of Weiss,

Goffstein, Kraus, Seigel & Sherman, of St. Louis, Missouri, for appellee Vans Insurance Agency, Inc.

Duane C. Quaini, Steven H. Frankel, and Peter J. Valeta, of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for *amicus curiae* National Association of Independent Insurers.

JUSTICE SIMON delivered the opinion of the court:

The plaintiff, Edward K. Fuoss, appeals from a grant of summary judgment by the circuit court of Madison County in favor of defendants, Auto Owners (Mutual) Insurance Company (Auto Owners) and Van's Insurance Agency (Van's). Fuoss' complaint was based on the defendants' alleged failure, in violation of section 143a—2 of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 755a—2(3)), to offer underinsured motor vehicle coverage as part of his automobile insurance policy. The statute in question states that: "Any offer made [to purchase insurance] under *** this Section shall also include an offer of underinsured motorist coverage." Underinsured motorist insurance provides coverage against an "underinsured motor vehicle" which,

> "[f]or the purpose of this Act *** means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured *** and for which the sum of the limits of liability under all bodily injury liability insurance policies *** applicable to the driver or to the person or organization legally responsible for such vehicle *** is less than the limits for underinsured coverage provided the insured *** at the time of the accident." Ill. Rev. Stat. 1981, ch. 73, par. 755a—2(3).

Fuoss purchased an Auto Owners insurance policy through Van's with bodily injury liability limits of $25,000 per person and $50,000 per occurrence ($25,000/$50,000). The policy also included uninsured motorist insurance of $15,000/$30,000, covering Fuoss in the event

he was in an accident and the at-fault driver carried no insurance. In that instance Fuoss would be covered in an amount up to $15,000 per person and $30,000 per occurrence. Fuoss' policy, however, failed to include *under*insurance; it provided no protection in the event the at-fault driver had insufficient insurance to cover Fuoss' damages.

While this policy was in effect, Fuoss was injured in an automobile accident in which Toni Kerr was at fault. She was insured with bodily injury liability limits of $100,000/$300,000. Fuoss sued Kerr and settled for $100,000, the maximum amount payable under her policy.

In his complaint against Auto Owners and Van's, Fuoss sought a declaration that they violated section 143a—2 of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 755a—2) and asked the court to reform his original insurance policy to include sufficient amounts of underinsurance to cover all the damages from the accident, an amount which he alleged was greater than the $100,000 he received in his settlement with Kerr's insurer. Fuoss attached to his amended complaint an affidavit which stated: "If I had been aware of the existence and the availability of underinsured motorist coverage, I would have purchased an amount of underinsured motorist coverage that would have been sufficient to cover my loss herein."

In granting summary judgment for the defendants, the circuit judge relied on *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329. *Tucker* held that the proper remedy for an insurance provider's failure to offer underinsured motorist coverage was to imply such coverage by operation of law with limits equal to the injured party's uninsured motorist coverage. (125 Ill. App. 3d 329, 337.) Under section 143a—2(3) of the Code, the "limits of liability for an insurer providing

underinsured motorist coverage [are] the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance polic[y]." (Ill. Rev. Stat. 1981, ch. 73, par. 755a—2(3).) Since Fuoss' uninsured policy limits of $15,000/$30,000 were less than the $100,000 settlement he received from Kerr, the circuit judge concluded that Kerr's vehicle was not underinsured and that Fuoss incurred no damage as a result of the failure to offer him underinsured motorist coverage.

The appellate court affirmed, but concluded that the highest limits of underinsured motorist coverage that could be implied by operation of law were the limits Fuoss himself had selected for bodily injury coverage. (148 Ill. App. 3d 526.) Inasmuch as Fuoss received more in settlement than the $25,000/$50,000 bodily injury limits he had chosen and paid for under his policy, the appellate court held that the Code precluded any further recovery and thus affirmed the circuit court's ruling. We granted Fuoss' petition for leave to appeal under our Rule 315 (107 Ill. 2d 107 R. 315), and allowed the Association of Independent Insurers leave to file an *amicus* brief on behalf of the defendants.

Because we are reviewing a grant of summary judgment, we must determine whether, after liberally construing all the facts in the pleadings and affidavits in favor of Fuoss, who was the nonmoving party, the circuit judge correctly concluded that there were no genuine issues of material fact for trial. (See, *e.g., Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380; *C. D. Shockley v. Ryder Truck Rental, Inc.* (1979), 74 Ill. App. 3d 89, 94.) Even if we were to resolve all the facts in Fuoss' favor and assume that the defendants violated the Code, the Illinois Insurance Code would still preclude any recovery.

Section 143a—2(4) of the Code states: "The named insured may elect to purchase limits of underinsured mo-

torist coverage in an amount up to *the uninsured motorist coverage on the insured vehicle \*\*\**." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 73, par. 755a—2(4).) It furthers provides that uninsured coverage may be purchased "in an amount *up to the insured's bodily injury liability limits.*" (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 73, par. 755a—2(1).) Should we reform Fuoss' policy in accordance with the Code, we could imply coverage at no more than either $15,000/$30,000 (as the circuit court did)—the amount of his uninsured limits—or $25,000/$50,000 (as the appellate court did)—the amount of his bodily injury liability insurance. Under the most favorable reading of the Code, therefore, the defendants would be responsible for paying no more than $25,000 per person, "less those amounts actually recovered under the applicable bodily injury insurance policies \*\*\* maintained on the underinsured motor vehicle [which in this case is $100,000]." (Ill. Rev. Stat 1981, ch. 73, par. 755a—2(3).) Since this $100,000 settlement is greater than the $25,000 maximum Fuoss could collect from the defendants, Fuoss incurred no damage as a result of the alleged violation and thus the circuit judge was correct in granting summary judgment in favor of the defendants.

Fuoss' claim that he would have purchased a sufficient amount of underinsurance to cover his loss is too ambiguous to raise a genuine issue of fact. It is unclear whether he is asserting that he would have purchased the maximum amount of underinsurance available under his original policy, which as noted above could in no event be greater than his bodily injury liability limits of $25,000/$50,000, or whether he would have increased his bodily injury liability limits more than fourfold to make himself eligible for underinsurance in an amount greater than the $100,000 Kerr's insurer paid him. Furthermore, Fuoss' claim is highly speculative; he had no way of

knowing at the time he purchased his policy what his damage would be. Conceivably, Kerr could have carried higher bodily injury liability limits, making it possible for Fuoss to have recovered his entire loss from Kerr's insurer. Had this happened, Fuoss would have had no need for underinsured motor vehicle coverage. Finally, as our appellate court accurately observed, to give credence to Fuoss' statement would result in "an aggrieved party *** rewrit[ing] his insurance contract to fit his needs *after* a loss [has] occurred, a procedure completely inimical to the concept of insurance." (Emphasis in original.) (148 Ill. App. 3d 526, 534.) It would permit Fuoss to choose, after the fact, underinsurance coverage in an amount greater than he originally selected for bodily injury liability coverage with the result that Fuoss would be providing more protection for himself than he was originally willing to extend to the general public. Such an outcome would, as the appellate court said, be "repugnant to our system of justice." (148 Ill. App. 3d 526, 535.) Therefore, the judgments of the circuit and appellate courts are affirmed.

*Judgments affirmed.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.