**Kathryn HUBNER and Steven Hubner, Plaintiffs,**

v.

**GRINNELL MUTUAL REINSURANCE COMPANY, Defendant.**

No. 97–3266.

United States District Court, C.D. Illinois, Springfield Division.

June 24, 1998.

---

Gary L. Clark, Peoria, IL, for Plaintiffs.

Michael T. Reagan, LaSalle, IL, for Defendant.

## OPINION

RICHARD MILLS, District Judge.

An insured obtained an insurance policy covering his truck and a separate policy covering his motorcycle.

The uninsured motorist provision of the policy issued on his truck had a higher policy limit than the uninsured motorist provision of the policy issued on his motorcycle.

If the insured is injured by an uninsured motorist while riding his motorcycle, may the insured recover under the uninsured motorist provision of the policy issued on his truck?

No.

## I. BACKGROUND

In the summer of 1996, Kathryn and Steven Hubner owned two vehicles, a 1979 Chevrolet pickup truck and a 1995 Honda motorcycle. Grinnell Mutual Reinsurance Company ("Grinnell") insured the Hubner's truck ("the Grinnell policy"); Dairyland Insurance Company ("Dairyland") insured their motorcycle ("the Dairyland policy") The Grinnell policy included uninsured motorist coverage with a policy limit of $50,000.00; likewise, the Dairyland policy included uninsured motorist coverage with a policy limit of $20,000.00.

On July 4, 1996, the Hubners were riding their motorcycle when it was struck by another vehicle.[1] As a result of this accident, Kathryn Hubner suffered bodily injuries. Because the vehicle which struck their motorcycle was uninsured, Kathryn Hubner made a claim to Dairyland under the uninsured motorist provision of the Dairyland policy. Accordingly, Dairyland paid Kathryn Hubner $20,000.00, *i.e.*, the policy limit.

The Hubners have now filed the instant suit seeking a declaratory judgment from the Court. The Hubners argue that they are also entitled to recover $50,000.00 (*i.e.*, the policy limit) under the uninsured motorist provision of the Grinnell insurance policy.[2] Thus, the Hubners ask the Court to enter an Order declaring that Grinnell must provide uninsured motorist coverage to Kathryn Hubner and that Grinnell must pay its proportionate share of her damages.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

1. Steven Hubner was operating the motorcycle, and Kathryn Hubner was a passenger.

2. The Hubner's truck was not involved in the accident.

entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(c); *see Ruiz–Rivera v. Moyer*, 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist*, 833 F.2d 639 (7th Cir.1987).

### III. ANALYSIS

■ The Hubners argue that the clear language of the Grinnell policy establishes that the uninsured motorist portion of that policy provides coverage for Kathryn Hubner's injuries resulting from the July 4, 1996, accident. The Hubners rely upon the following language in the Grinnell policy:

DEFINITIONS USED THROUGHOUT THIS POLICY

(1) "You" and "your" means the policy holder named in the declarations.

(2) "We" and "us" and "our" means the company providing this insurance.

Part III—UNINSURED MOTORIST/UNDERINSURED MOTORISTS.

We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The bodily injury must be caused by accident and arise out of the ownership, maintenance, or use of an uninsured motor vehicle.

(1) Insured person means:

(d) Any occupant of any vehicle being operated by you or a relative.

On the other hand, Grinnell denies that the policy covers Kathryn Hubner's injuries. In support of its position, Grinnell relies on the Illinois Insurance Code ("the Code") which provides in relevant part:

Uninsured motor vehicle coverage does not apply to bodily injury, sickness, disease, or death resulting therefrom, of an insured while occupying a motor vehicle owned by, or furnished or available for the regular use of the insured, a resident spouse or resident relative, if that motor vehicle is not described in the policy under which a claim is made or is not a newly acquired or replacement motor vehicle covered under the terms of the policy.

215 ILCS 5/143a(1).

The Court finds that the Hubners are not entitled to coverage under the uninsured portion of the Grinnell insurance policy. The United States Court of Appeals for the Seventh Circuit has recently noted:

It is fundamental insurance law that "[e]xisting and valid statutory provisions enter into and form a part of all contracts of insurance to which they are applicable, and, together with settled judicial constructions thereof, become a part of the contract as much as if they were actually incorporated therein." 2 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 19:1, at 19–2 to 19–4 (1996) (footnotes omitted). Policy terms that are in conflict with statutory provisions are invalid. *Id.* § 19:2, at 19–5 to 19–8; *cf.* 2 E. Allan Farnsworth, Farnsworth on Contracts § 5.1, at 2; *id.* § . 5.8, at 68– 75 (1990). This principle is part of the law of Illinois.

*Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 861 (7th Cir.1997) (citations omitted). Thus, 215 ILCS 5/143a(1)'s restriction (*i.e.*, that uninsured motor vehicle coverage does not apply when an insured is occupying a vehicle owned, etc., by the insured if that vehicle is not described in the policy under which a claim is made) is as much a part of the Grinnell insurance policy as if it were transcribed verbatim therein. Title 215 ILCS 5/143a(1) clearly prohibits the Hubners

from making a claim under the Grinnell policy because the accident occurred on a motor vehicle (*i.e.*, their motorcycle) which is not described in that policy.

The Hubners argue that the Grinnell policy previously contained an exclusion which would have prevented their claim. Later, in an amendment to the policy, Grinnell deleted that exclusion. Therefore, the Hubners assert that they should be allowed to make a claim under the policy as written. However, because 215 ILCS 5/143a(1) is a part of the Grinnell insurance policy, the statute itself serves as a *de facto* exclusion and, as stated above, prohibits the Hubner's claim for uninsured motorist coverage under the Grinnell policy.

■ Even if the Court were to interpret the Grinnell insurance policy as the Hubners have, the Court would still deny their claim as violative of Illinois public policy. The Illinois Supreme Court has recently opined:

> In construing the language of an insurance policy, a court must ascertain and give effect to the intention of the parties as expressed in their agreement. To that end, terms utilized in the policy are accorded their plain and ordinary meaning. We will apply those terms as written unless such application contravenes public policy.

*State Farm Mut. Auto. Ins. Co. v. Villicana,* 181 Ill.2d 436, 692 N.E.2d 1196, 1199, 230 Ill.Dec. 30, 33 (Ill.1998) (citations omitted).

In the instant case, two public policies weigh against the Court adopting the Hubner's interpretation of the Grinnell insurance policy. First, if the Court were to find coverage under the Grinnell policy, it would encourage a consumer to purchase adequate uninsured motorist protection for one vehicle which he owns and little or no uninsured motorist protection on the other vehicle(s) which he might own. The Illinois Supreme Court has found that such a scenario contravenes public policy:

> Here, when the plaintiff insured his motorcycle with Pekin, he voluntarily elected to purchase uninsured-motorist coverage with limits of only $20,000 per person/$40,000 per accident. If we hold that he is never-

theless entitled to recover an additional $80,000 in uninsured-motorist coverage under his Allstate policy, we will simply encourage consumers to purchase adequate uninsured-motorist protection for one automobile and minimal or no uninsured-motorist protection for all other automobiles. Invalidating the exclusionary clause in Allstate's policy would therefore discourage consumers from purchasing the maximum amount of uninsured-motorist coverage when insuring their automobiles.

*Luechtefeld v. Allstate Ins. Co.,* 167 Ill.2d 148, 159–60, 656 N.E.2d 1058, 1064, 212 Ill. Dec. 224, 230 (Ill.1995).

Second, if the Court were to find coverage under the Grinnell policy, the Hubners would recover more under the Grinnell uninsured motorist coverage provision than they had originally selected for bodily injury liability coverage under the Dairyland policy.[3] The Illinois Supreme Court has opined that such a result also contravenes public policy:

> Thus, if the plaintiff was involved in an accident with his motorcycle in which he was at fault, only that amount of coverage would be available to injured third parties. The plaintiff is now attempting to recover more benefits for himself when injured by others than he elected to make available to third parties whom he injured. In *Fuoss v. Auto Owners (Mutual) Insurance Co.* (1987), 118 Ill.2d 430, 435, 114 Ill.Dec. 113, 516 N.E.2d 268, this court was critical of such a strategy in a different context. In *Fuoss,* an insured claimed that he was entitled to recover underinsured-motorist coverage in an amount greater than the liability coverage limits he had purchased. This court stated that, to allow him to do so:
>
> > "would permit [the insured] to choose, after the fact, underinsurance coverage in an amount greater than he originally selected for bodily injury liability coverage with the result that [the insured] would be providing more protection for himself than he was originally willing to extend to the general public. Such an outcome would, as the appellate court

---

**3.** The Dairyland policy had liability limits of $20,000.00 per person.

said, be 'repugnant to our system of justice.'" *Fuoss,* 118 Ill.2d at 435, 114 Ill.Dec. 113, 516 N.E.2d 268, *quoting Fuoss v. Auto Owners (Mutual) Insurance Co.* (1986), 148 Ill.App.3d 526, 535, 101 Ill.Dec. 951, 499 N.E.2d 539.

*Luechtefeld,* 167 Ill.2d at 160, 656 N.E.2d at 1064, 212 Ill.Dec. at 230.

Finally, Plaintiff's reliance upon 215 ILCS 5/442 is inapposite. Title 215 ILCS 5/442 provides:

Any contract or policy of insurance or any application, endorsement or rider form used in connection therewith issued in violation of any section of this Code requiring certain provisions to be inserted therein or the inclusion of provisions prohibited, or issued without submitting same for approval by the Director in accordance with section 143, shall nevertheless be held valid but shall be construed in accordance with the requirements of the section that the said policy, application, endorsement or rider violates, and when any provision in such contract, application, endorsement or rider is in conflict with any provision of this Code, the rights, and obligations of the company thereunder shall not be less favorable to the holder of the contract and the beneficiary or annuitant thereunder than is required by the provisions of this Code applicable thereto.

The Hubners assert that 215 ILCS 5/442 "validates" their claim for uninsured motorist coverage under the Grinnell policy which is in conflict with the Illinois Insurance Code because the uninsured motorist provision is more favorable to them than the coverage required under the Code. However, § 442 requires that the rights and obligations of the insurer not be less favorable to the insured than is required by the provisions of the Illinois Insurance Code, not of the policy itself. Section 442 requires that all policy provisions which are in conflict with the Code be construed in accordance with the Code, not in accordance with the policy itself.

■ Furthermore, "[s]tatutory provisions applicable to a contract of insurance are deemed to form a part of that contract and must be construed in connection therewith. Any attempt ... to dilute or diminish statutory provisions applicable to [the] contract of insurance is contrary to public policy and any conflict between statutory and policy provisions will be resolved in favor of the statutory provisions." *DC Electronics, Inc. v. Employers Modern Life Co.,* 90 Ill.App.3d 342, 348, 413 N.E.2d 23, 26, 45 Ill.Dec. 690, 695 (1980) (citation omitted). Likewise, "[s]tatutory provisions applicable to contracts of insurance are deemed to form a part of such contract and must be construed in connection therewith; policy provisions in conflict with the statute are void." *Harris v. St. Paul Fire & Marine Ins. Co.,* 248 Ill.App.3d 52, 57, 618 N.E.2d 330, 333, 187 Ill.Dec. 739, 742 (1993). In short, "the insured in question selected the policy and the uninsured motorist limits that apply to the owned vehicle in which the injury occurred. The insured was therefore bound by his or her choice of lower uninsured-motorist coverage for that owned vehicle." *Illinois Farmers Ins. Co. v. Cisco,* 178 Ill.2d 386, 394, 687 N.E.2d 807, 811, 227 Ill.Dec. 325, 329 (Ill.1997).

Because the Court has found that the uninsured motorist provision of the Grinnell policy does not cover Kathryn Hubner's injuries resulting from her July 4, 1996, accident, the Court need not address the issue of policy limits.

*Ergo,* Plaintiffs' Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment on Count I of Plaintiffs' Complaint is ALLOWED. Accordingly, summary judgment is hereby entered in favor of Defendant and against Plaintiffs on Count I of Plaintiffs' Complaint.