ILLINOIS FARMERS INSURANCE COMPANY, Plaintiff-Appellant, v. GLORIA CISCO, on Behalf of the Estate of Richard Cisco, Defendant-Appellee.

First District (4th Division) No. 1—94—3035

Opinion filed March 29, 1996.

Worker & Power, of Chicago (Danny L. Worker and Julie A. Hoffman, of counsel), for appellant.

Serpico, Novelle & Navigato, Ltd., of Chicago (Kevin J. O'Shea, of counsel), for appellee.

MODIFIED UPON RECONSIDERATION AFTER REMAND

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Illinois Farmers Insurance Company, filed the instant action in the circuit court of Cook County against the defendant, Gloria Cisco, seeking a declaration of rights and liabilities under two automobile liability insurance policies it issued to the defendant and her deceased husband, Richard Cisco. The parties filed cross-motions for judgment on the pleadings. The circuit court denied the plaintiff's motion, granted the defendant's motion, but held that the defendant could not stack the benefits under the two policies. The plaintiff filed a motion for reconsideration, which was denied, and this appeal followed. We affirm.

The facts giving rise to this litigation are not in dispute. Richard Cisco (Cisco) was fatally injured in a motor vehicle collision with an automobile driven by an uninsured driver. The vehicle driven by Cisco was owned by his employer and insured under an insurance policy issued by the Insurance Company of North America (INA). The INA policy provided uninsured motorist benefits of $20,000 per person and $40,000 per occurrence, and INA paid the $20,000 uninsured motorist benefit as a consequence of Richard Cisco's death.

At the time of his death, Cisco and his wife, the defendant, were insured under two personal automobile insurance policies issued by the plaintiff. The policies insured two vehicles owned by the Ciscos and separate premiums were charged for each policy; each of the policies provided uninsured motorist benefits of $100,000 per person and $300,000 per occurrence. Both policies are included in the record

on appeal and each contains identical language which reads in pertinent part as follows:

> "PART II—UNINSURED MOTORIST
> Coverage C—Uninsured Motorist Coverage
> (Including Underinsured Motorist Coverage)
> We will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured person. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of the uninsured motor vehicle.
>
> \* \* \*
>
> Other Insurance
>
> \* \* \*
>
> 4. We will not provide insurance for a vehicle other than your insured car, unless the owner of that vehicle has no other insurance applicable to this part.
> 5. If any applicable insurance other than this policy is issued to you by us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability."

It is undisputed that: (1) Cisco fell within the definition of an insured person under the policies; (2) the driver of the vehicle that struck him was an uninsured motorist within the meaning of the policies; (3) at the time of the collision, Cisco was not driving a vehicle defined as "your insured car" under either of the policies; and (4) the owner of the vehicle being driven by Cisco maintained insurance on that vehicle which included uninsured motorist coverage.

The defendant's demand for payment pursuant to the uninsured motorist coverage in the plaintiff's policies was denied based upon paragraph 4 of the "Other Insurance" section as set forth above. Thereafter, the plaintiff filed the instant declaratory judgment action.

The plaintiff moved for judgment on the pleadings pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 1992)), contending that its policies (1) did not provide coverage for Cisco's death because the vehicle he was driving was covered by an insurance policy containing uninsured motorist benefits and (2) precluded stacking uninsured motorist benefits. The defendant filed a cross-motion for judgment on the pleadings, arguing that the policy provision the plaintiff relied on to deny uninsured motorist benefits is unenforceable because it is ambiguous and against public policy. Also, she argued that stacking benefits under both policies is not precluded

because they paid separate premiums for uninsured motorist coverage on both policies.

In her brief on appeal, the defendant states that she did not attempt to stack the uninsured motorist benefits under both policies. Although we do not read her cross-motion for judgment on the pleadings in that way, she has not appealed the trial court's ruling that recovery was available under only one of the policies. In this appeal, we are only required to address the question of whether uninsured motorist benefits under the plaintiff's policies are owed under the facts of this case.

■ The construction of an insurance policy presents a question of law and, consequently, our review is *de novo*. *Shefner v. Illinois Farmers Insurance Co.*, 243 Ill. App. 3d 683, 611 N.E.2d 626 (1993); *Murphy v. State Farm Mutual Automobile Insurance Co.*, 234 Ill. App. 3d 222, 599 N.E.2d 446 (1992). If the terms of the policy are ambiguous, it must be construed in favor of the insured. *Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d 167, 370 N.E.2d 1044 (1977). If the terms are unambiguous, there is no need for construction, and the policy must be applied as written unless it contravenes public policy. *Menke v. Country Mutual Insurance Co.*, 78 Ill. 2d 420, 401 N.E.2d 539 (1980).

Relying primarily upon the holding in *Shefner*, 243 Ill. App. 3d at 687, the plaintiff argues that its policies clearly and unambiguously provide that it will not pay uninsured motorist benefits for an injury sustained by an insured while in a vehicle other than a vehicle insured under the policy unless the owner of that vehicle has no uninsured motorist coverage. It also argues that such a provision is not against public policy because its application could never result in a total denial of uninsured motorist benefits.

■ The defendant makes essentially two arguments addressing the ambiguity issue. First, she argues that the first sentence of part II of the policies, which states that the plaintiff will pay all sums which an insured person is entitled to recover as damages, is consistent with Illinois cases holding that uninsured motorist coverage runs to the person of the insured and is not dependent upon the insured being in a vehicle insured under the policy at the time of injury. See *Squire*, 69 Ill. 2d 167, 370 N.E.2d 1044. The clause that the plaintiff relied upon to deny coverage speaks in terms of coverage for a vehicle. The defendant contends that this wording leads to a reasonable interpretation that the clause is only operative in cases of property damage. The flaw in this argument is that the uninsured motorist coverage in the policies only applies to bodily injury and not property damage. Next, she argues that an ambiguity is created by reason of the placement of the provision in the "Other Insurance" section of the policy as opposed to the section labeled "Exclusions." We disagree. The wording of the provision is clear without regard to its location in the policy.

■ On the public policy issue, the defendant argues that section 143a—2(1) of the Illinois Insurance Code (Ill. Rev. Stat. 1989, ch. 73, par. 755a—2(1) (now 215 ILCS 5/143a—2(1) (West 1992))) mandates that insureds be offered an option to purchase uninsured motorist coverage in an amount equal to their bodily injury liability limits. Any attempt by an insurer to make the uninsured motorist coverage purchased by an insured above the minimum levels set forth in section 143a of the Code (Ill. Rev. Stat. 1989, ch. 73, par. 755a (now 215 ILCS 5/143a (West 1992))) dependent upon the total lack of uninsured motorist coverage on the vehicle in which the insured is riding when injured violates section 143a—2(1) of the Code. We agree.

Section 143a—2(1) in effect at the time that the plaintiff issued its policies to the Ciscos (Ill. Rev. Stat. 1989, ch. 73, par. 755a—2(1)) provided that no automobile liability insurance policy shall be issued in this State unless the insured is offered uninsured motorist coverage in an amount equal to the bodily injury liability limits. Section 143a (Ill. Rev. Stat. 1989, ch. 73, par. 755a) required uninsured motorist coverage of an insured person regardless of the vehicle in which he was located when injured. See *Squire*, 69 Ill. 2d at 179. We believe that the provision in its policies which the plaintiff relied upon to deny coverage in this case violates Illinois public policy as set forth in section 143a—2(1) and is, therefore, unenforceable under section 442 of the Code (215 ILCS 5/442 (West 1992)).

When the Ciscos applied for automobile liability insurance, the plaintiff offered and they purchased uninsured motorist coverage with limits equal to the limits of their bodily injury coverage. It was the plaintiff's statutory obligation to offer those limits and it was the Ciscos' right to receive that coverage without regard to the vehicle in which they were located when injured by an uninsured motorist. The plaintiff seems to argue that because uninsured motorist coverage was provided under the provisions of the INA policy insuring the vehicle in which Cisco was riding at the time of his injury, the public policy considerations of section 143a have been satisfied. This argument, however, ignores the public policy underlying section 143a—2.

The requirement that insurers offer uninsured motorist coverage in an amount up to the insured's bodily injury liability limits was added to the Code by Public Act 81—1202 (Pub. Act 81—1202, eff. March 1, 1980) and codified as section 143a—1 (Ill. Rev. Stat., 1979 Supp., ch. 73, par. 755a—1). Although section 143a—1 was repealed by Public Act 81—1426 (Pub. Act 81—1426, eff. September 3, 1980), the identical provisions relating to uninsured motorist coverage limits were recodified as section 143a—2(1). The language of section 143a—1 and the legislative debates at the time of its passage indicate that the

legislature intended that the insured have the option to be protected against damages suffered as a consequence of an uninsured motorist's negligence up to the limits of the insured's own bodily injury liability limits. Speaking in support of the measure, its Senate sponsor, Senator D'Arco, stated:

> "The question was raised when *** you're involved in an accident and the person that's involved in the accident with you doesn't have insurance, so we provide in the law that a person shall be offered by the insurance company, uninsured motorist coverage at the same limits that the insurance company offers bodily injury and liability coverage, so he can insure himself against an uninsured motorist." 81st Ill. Gen. Assem., Senate Proceedings, June 27, 1979, at 327 (statements of Senator D'Arco).

If, as the plaintiff contends, the legislature's only concern was to ensure that a statutory minimum level of uninsured motorist coverage was provided in every policy of automobile liability insurance issued in this State, section 143a accomplished that purpose and there was no need to enact section 143a—1.

The plaintiff has cited a number of decisions in support of the proposition that policy provisions which do not completely deny uninsured motorist benefits up to the statutory minimum mandated by section 143a are consistent with Illinois public policy. See *Vanek v. Illinois Farmers Insurance Co.*, 268 Ill. App. 3d 731, 644 N.E.2d 419 (1994); *Shefner*, 243 Ill. App. 3d 683, 611 N.E.2d 626; *Nationwide Mutual Insurance Co. v. Hecker*, 183 Ill. App. 3d 13, 538 N.E.2d 1277 (1989); *Makela v. State Farm Mutual Automobile Insurance Co.*, 147 Ill. App. 3d 38, 497 N.E.2d 483 (1986). Each of these cases, however, is readily distinguishable from the instant action. In each case the plaintiff cites, the injured party was the owner of multiple vehicles insured by the same carrier but with varying levels of uninsured motorist coverage. When injured by an uninsured motorist while riding in one of his own insured vehicles, the injured party attempted to collect the highest uninsured motorist benefits afforded under his policies without regard to the limits of uninsured motorist coverage applicable to the vehicle in which he was riding at the time of his injury. On review, the injured party's right to uninsured motorist benefits was determined by the limits of coverage applicable to the vehicle in which he was riding. Put simply, the injured party made an election as to the level of uninsured motorist coverage he desired for each of his vehicles and when injured by an uninsured motorist, was limited in his right to benefits by his own election.

In its petition for rehearing which we denied on October 26, 1995, the plaintiff relied heavily upon the decision in *Luechtefeld v. Allstate Insurance Co.*, 167 Ill. 2d 148, 656 N.E.2d 1058 (1995). We

*believe, however, that the issues addressed in Luechtefeld* are readily distinguishable from those presented by the instant action. In *Luechtefeld*, the Supreme Court addressed only the public policy embodied in section 143a of the Code (*Luechtefeld*, 167 Ill. 2d at 153); we, on the other hand, are required to address the public policy embodied in section 143a—2(1). Further, in *Luechtefeld* the plaintiff made a voluntary election as to the level of uninsured motorist coverage he desired when he purchased insurance for the motorcycle upon which he was riding at the time of his injury (*Luechtefeld*, 167 Ill. 2d at 159-60), but no such voluntary election was made in this case.

Cisco made no election as to the uninsured motorist coverage on the vehicle in which he was riding at the time of his injury. He made his election as to uninsured motorist coverage when he purchased automobile insurance from the plaintiff covering his own vehicles and paid the requisite premium. Unlike the injured parties in *Luechtefeld* and the other cases cited by the plaintiff, the defendant in this case is not attempting to avoid the consequences of a voluntary election as to the level of uninsured motorist coverage desired. Instead, she seeks only to obtain the benefits of the coverage to which she and her husband were entitled by statute, which they chose, and for which they paid a premium.

Affirmed.

CAHILL and O'BRIEN, JJ., concur.